IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIMBERLY JEAN BROWN,                    *

     Plaintiff,                         *

v.                                      *            Civil Action No. DLB-20-2632

BOARD OF EDUCATION OF PRINCE            *
GEORGE'S COUNTY, MARYLAND, *et al*.,
                                        *
     Defendants.
                                        *

## MEMORANDUM OPINION

Plaintiff Kimberly Jean Brown relocated from Chicago to Maryland to teach in the high school where her brother Gorman E. Brown was the principal.  Soon after the schoolyear began, she was transferred to a different school.  Upset about the transfer, which she believed breached the agreement she had with her employer, and distressed by the events leading up to and following the transfer, which in her view amounted to fraud and other tortious conduct, Ms. Brown filed this lawsuit against her brother, the Board of Education of Prince George's County ("Board" or "PGCPS"), attorney Erick Tyrone, and the Tyrone Law Group.  ECF 1.  Defendants filed motions to dismiss all but three counts of plaintiff's twelve-count amended complaint.  ECF 23, 25, 29. For the reasons that follow, defendants' motions are granted.

## I.      Background

For purposes of deciding the motions to dismiss, the Court accepts the following allegations in Ms. Brown's amended complaint as true.  In 2013, Ms. Brown was living in Chicago with her two children when her brother, the principal of Charles Flowers High School ("Flowers") in Prince George's County, offered her a teaching position at his school.  ECF 22, ¶¶ 17–18.  He also offered her and her children an apartment in his home, and he told her that the Board provided

"top-notch" health insurance.  *Id.* ¶ 18.  The opportune offer came after Ms. Brown, who was an attorney practicing in Chicago at the time, spent the second half of 2012 dealing with the aftermath of a fire in her home and law firm (which shared the same building), the stress of which caused her to suffer a transient ischemic attack and ongoing health issues.  *Id.* ¶¶ 10–16.  The fire had displaced her family and her business, which lost revenue, and she could not afford the healthcare she needed after her ministroke.  *Id.* ¶¶ 10, 12, 16.

Ms. Brown agreed to accept the teaching position if the Board would agree to two conditions.  *Id.* ¶¶ 21, 43.  First, the Board had to agree that she would teach at Flowers, where her brother was the principal, even though the arrangement may have "violated PGCPS's policies." *Id.*  Second, the Board had to ensure that her son would "be admitted into a PGCPS school comparable to the Chicago public school [he] was attending."  *Id.*

The Board agreed to both conditions and offered her the position, stating "in writing, that Plaintiff would be allowed to work as a STEM teacher at Flowers for her brother."  *Id.* ¶ 23.  The Board also assured her before she accepted the offer that her health insurance plan "would be active immediately" after new teacher orientation.  *Id.* ¶ 24.  It memorialized the agreement in emails.  *Id.* ¶ 70.  The Board assigned Ms. Brown to teach at Flowers for the 2013–2014 school year.  *Id.* ¶ 26.

Ms. Brown relocated to Prince George's County before school began.  She moved into the apartment in her brother's home; her children decided to remain in Chicago with their father.  *Id.* ¶¶ 18, 20, 25.  She attended "PCGPS's teacher and staff preparation activities" and "new hire orientation" and enrolled in a healthcare plan.  *Id.* ¶ 27.  While she was at Flowers preparing for the schoolyear, Ms. Brown met a member of the Flowers parents' organization who stated that she had an affair with Principal Brown and he "changed one of her son's grades."  *Id.* ¶¶ 29–30.

Principal Brown denied changing the grade but admitted to having "a couple" affairs, including with the woman who spoke to plaintiff. *Id.* ¶¶ 31–32, 66. He "instructed [his sister] to ignore any negative allegations [she] might hear about him because they were unfounded." *Id.* ¶ 32.

Ms. Brown began the schoolyear teaching at Flowers, where her initial interactions with other teachers did not go smoothly. *Id.* ¶ 28. Principal Brown introduced her as his sister at a staff meeting. *Id.* "[T]eachers with seniority" who wanted to teach an entrepreneurship class became upset when Principal Brown directed his staff to assign the class to Ms. Brown, who had offered to teach it. *Id.* ¶¶ 33–34. After that, Ms. Brown asked her brother not to give her any more preferential treatment. *Id.* ¶¶ 34–35. Also, Principal Brown told her that the teachers' union representative, whose classroom was next to hers, asked to move away from plaintiff and "may have had an issue with Plaintiff working at Flowers." *Id.* ¶ 36–38.

"Soon after classes commenced," the Board transferred Ms. Brown to another school and "issued a letter of reprimand to Principal Brown for allowing his sister to work for him." *Id.* ¶¶ 39, 45. The Board informed her that "it was obligated to transfer [her] because one or more teachers"—whose identities it would not disclose—"filed a grievance(s) complaining that Plaintiff's working for her brother violated PGCPS's policies." *Id.* ¶¶ 43–44.

After the transfer, Ms. Brown experienced "severe depression for more than a year," as well as "severe anxiety, intense headaches and insomnia," and she was so "distraught [she] could not function." *Id.* ¶¶ 46–47, 53. Her relationships with her children suffered. *Id.* ¶¶ 48, 53. She immediately took sick leave, and when she sought treatment, she learned that her health insurance was not active. *Id.* ¶¶ 48–50. She paid out of pocket for some medical appointments and was unable to schedule others. *Id.* ¶ 50.

After she was transferred, Ms. Brown hired Erick Tyrone, an attorney who was a friend and fraternity brother of Principal Brown, to represent her in suing the Board.  ECF 22, ¶¶ 130–31.  She states that her brother initially planned to sue the Board as well but then changed his mind and "pleaded with Plaintiff not to sue" because he feared retaliation from the Board.  *Id.* ¶¶ 131–32.  Due to Principal Brown's concerns, plaintiff did not sue the Board at that time.  *Id.* ¶ 133.

Instead of working at another school, Ms. Brown resigned, "[w]ith Attorney Tyrone's help."  *Id.* ¶¶ 51, 133.  Ms. Brown does not explain how Mr. Tyrone helped her resign.  Her brother then unexpectedly told her to move out of the apartment in his home, so she moved in with their parents.  *Id.* ¶¶ 54–55.  She remained in Maryland for about a month after she resigned and returned to Chicago when her health insurance ended.  *Id.* ¶ 52.

PGCPS mailed her first paycheck to her brother's address.  *Id.* ¶ 56.  She then asked the Board to send her last two paychecks to her new address.  *Id.*  The Board initially sent a letter stating it had overpaid her and demanding reimbursement, but then it stated the letter was sent in error.  *Id.* ¶ 58.  A human resources representative later stated that she thought plaintiff did not want her paychecks.  *Id.* ¶ 61.  The Board reported to the IRS that it had paid her, but she did not receive the two outstanding paychecks until 2017.  *Id.* ¶¶ 56, 58–60, 63.  Ms. Brown "believes that Principal Brown expressed to PGCPS that Plaintiff did not want the money" and thereby "may have substantially delayed PGCPS from reissuing Plaintiff's paychecks."  *Id.* ¶ 106.

Around the time Ms. Brown resigned, her brother talked to her about installing a hidden camera in his Flowers office because he believed someone was entering it without permission.  *Id.* ¶¶ 134–35.  Ms. Brown told him she thought he needed Board approval to install a camera.  *Id.* ¶ 136.  Later, plaintiff learned that Mr. Tyrone "was representing Principal Brown in a suit against PGCPS regarding a hidden camera found in Principal Brown's office."  *Id.* ¶ 138.  She tried to

contact the attorney "to let him know there might be a conflict of interest with respect to the hidden camera conversation and other items," but he did not respond to her email, call, or letter. *Id.* ¶¶ 138–39.

Years later, in 2020, Principal Brown admitted to Ms. Brown that he played a role in causing the difficulties she encountered at Flowers. *Id.* ¶ 67.  He told her that he "knew assigning the entrepreneurship course to [her] would cause backlash." *Id.* ¶ 67B.  He also informed her that the union representative whose classroom was next to hers had filed a grievance and had not actually asked to change classrooms. *Id.* ¶ 67A.  In addition, he stated that it had been his "goal to have a teacher file a grievance . . . because he did not want Plaintiff to continue teaching at Flowers." *Id.* ¶ 67C–D.  Plaintiff claims that, after she learned about one of his affairs and heard that he improperly changed a student's grade, he "desired to have [her] transferred to prevent [her] from discovering additional information." *Id.* ¶ 105.

Plaintiff's claims against her brother extend beyond her allegations regarding her brief employment at Flowers.  She alleges that, in November 2019, he "told their father . . . and possibly others" several false statements about her, knowing they were false and "intend[ing] to destroy Plaintiff's reputation and credibility and to encourage family members to turn their backs on Plaintiff." *Id.* ¶¶ 111–12.  Specifically, she claims her brother told their father that she "was on drugs and is an alcoholic," that she "spent the proceeds from the sale of her home to buy drugs," that she "is promiscuous," that she "stole[] money from an elderly client and . . . was going to lose her license to practice law," that she "fabricated stories of being victimized by stalkers, . . . was delusional and . . . needed to be checked into a residential psychiatric institution and medicated," and that she "filed a baseless lawsuit." *Id.* ¶ 111.

On September 11, 2020, plaintiff, who was a non-practicing attorney at the time, reconsidered the possibility of a lawsuit. She filed a complaint *pro se*, alleging fraud and other tort claims against "Prince George's County Public School System," Mr. Tyrone, the Tyrone Law Group, and Principal Brown. ECF 1. Defendants filed notices of intent to file motions to dismiss, identifying perceived deficiencies in the complaint. ECF 7, 14, 16. In response, plaintiff sought leave to amend her complaint, which the Court granted. ECF 19.

In her amended complaint, Ms. Brown brings claims of breach of contract and promissory estoppel against the Board (Counts 1 and 2), claims of fraud, fraudulent misrepresentation, civil conspiracy to commit fraud, and intentional infliction of emotional distress against the Board and Principal Brown (Counts 3, 4, 5, and 9), claims of tortious interference with economic relationship, defamation, and false light against Principal Brown (Counts 6, 7, and 8), a claim of vicarious liability against the Board for its agents' actions alleged in Counts 1, 2, 6, 8, and 9 (Count 10), a claim of negligence against attorney Tyrone (Count 11) and a claim of vicarious liability against the Tyrone Law Group for Mr. Tyrone's actions (Count 12). ECF 22.

The Board filed an answer as to Counts 1, 2, and 10, ECF 44, and defendants moved to dismiss all other counts. Mr. Tyrone and the Tyrone Law Group (together, "Tyrone") filed a motion to dismiss the claims against them, which the parties fully briefed. ECF 23, 32, 33. Principal Brown filed a motion to dismiss the claims against him only, which the parties fully briefed. ECF 25, 25-1, 48, 50. Principal Brown also joined the Board in filing a motion to dismiss the claims against both defendants, which the parties fully briefed. ECF 29, 29-1, 47, 49. No hearing is necessary. *See* Loc. R. 105.6.

## II.      Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim for relief.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir.), *as amended* (Jan. 20, 2017) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)); *see* Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).  Stated differently, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)).  When resolving a Rule 12(b)(6) motion to dismiss, the Court accepts the well-pleaded allegations as true.  *See Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray*, 948 F.3d at 226 (quoting *Tobey*, 706 F.3d at 387).

## III.     Tyrone's Motion to Dismiss

Plaintiff brings a legal malpractice claim against Mr. Tyrone and a claim for vicarious liability for Mr. Tyrone's negligence against his firm, the Tyrone Law Group.  ECF 22, ¶¶ 140, 144.  Under Maryland law, to state a legal malpractice claim, a plaintiff must allege "(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." *Thomas v. Bethea*, 718 A.2d 1187, 1195 (Md. 1998); *see Shulman v. Progressive Com. Cas. Co.*, No. DKC-19-1709, 2020 WL 758239, at *4 (D. Md. Feb. 14, 2020) (citing *Thomas*); *Flaherty v. Weinberg*, 492 A.2d 618, 624 (Md. 1985) (same); *Hall*

*v. Sullivan*, 465 F. Supp. 2d 475, 478 (D. Md. 2006) (same), *aff'd,* 272 F. App'x 284 (4th Cir. 2008).

To allege neglect of a reasonable duty, Ms. Brown claims that Mr. Tyrone "owed Plaintiff, a former client, a duty to avoid a conflict of interest" and, "[b]y not responding to Plaintiff's communications and not discussing whether there was a conflict of interest, Plaintiff believes Attorney Tyrone breached that duty."  ECF 22, ¶ 140.  In her opposition to Tyrone's motion, she explains that her legal malpractice claim is based on Mr. Tyrone's alleged violation Maryland Rule of Professional Conduct 1.9, which prohibits the representation of a new client whose interests are materially adverse to a former client without the former client's written informed consent.  ECF 32, at 5.[1]

Ms. Brown fails to state a claim for legal malpractice because she has not alleged breach of a legally cognizable duty.  A violation of the Maryland Professional Rules of Responsibility does not give rise to a private cause of action against an attorney or create a presumption that the attorney has breached a legal duty.  *See Blondell v. Littlepage*, 991 A.2d 80, 96 (Md. 2010) (holding that a violation of a Maryland Rule of Professional Conduct "may not serve as a basis for civil liability, as expressed in the preamble to the Rules of Professional Conduct: 'Violation of a Rule does not itself give rise to a cause of action against a lawyer nor does it create any presumption that a legal duty has been breached.'").   This Court, when previously presented with the same question, held similarly.  *See Nirala v. Adhali*, No. PX-18-3330, 2019 WL 3457661, at *5 (D. Md.

---

[1] Maryland Rule of Professional Conduct 1.9 provides

> An attorney who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Md. Rule 19-301.9(a).

July 31, 2019) (quoting preamble and noting "Defendants have no *legal* duty to abide by the Rules of Professional Conduct."); *McClain v. Wells Fargo Bank, N.A.*, No. TDC-17-1094, 2018 WL 1271231, at *8 (D. Md. Mar. 8, 2018) (quoting preamble), *aff'd*, 738 F. App'x 797 (4th Cir. 2018); *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 646 (D. Md. 2010) (quoting preamble); *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 774 (D. Md. 2004) (declining to recognize a private cause of action under Maryland law for violation of Rule 1.9).  Because Ms. Brown has alleged only that Tyrone violated "a duty to avoid a conflict of interest" under Rule 1.9 of the Maryland Rules of Professional Conduct, she has not alleged a breach of a cognizable legal duty and she fails to state a claim for legal malpractice. [2]

Tyrone's motion to dismiss the legal malpractice claim is granted.  Counts 11 and 12 are dismissed.

## IV.    The Board's Motion to Dismiss

### A.  Fraud Claims

Ms. Brown claims the Board and Principal Brown are liable for fraud, fraudulent misrepresentation, and civil conspiracy to commit fraud.  These claims are subject to Rule 9(b)'s heightened pleading standard, which requires a plaintiff to "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  Rule 9(b) "ensures that the defendant has sufficient information to formulate a defense," prevents frivolous and unsubstantiated fraud claims from progressing to discovery, and protects against unwarranted reputational damage.  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).  The rule requires the complaint to allege "the [1] time, [2] place, and [3] contents of the

---

[2] Because she has not alleged breach of a legal duty, the Court need not decide whether Ms. Brown has alleged that she suffered loss proximately caused by Tyrone's alleged violation of Rule 1.9.

false representations, . . . [4] the identity of the person making the misrepresentation[,] and [4] what he obtained thereby." *Id.* (quoting 5 Charles Alan Wright and Arthur R. Miller, *Fed. Prac. & Proc.: Civil* § 1297, at 590 (2d ed. 1990)). Allegations regarding a party's mindset "may be alleged generally." Fed. R. Civ. P. 9(b).

The tort of "[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement." *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003). "[I]ntentional or fraudulent misrepresentation . . . is the garden variety of fraud and is often described simply as 'fraud' . . . ." *Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC*, No. ELH-17-3420, 2019 WL 1441812, at *16 (D. Md. Mar. 31, 2019). Thus, the fraud and fraudulent misrepresentation claims (Counts 3 and 4) assert the same cause of action. *See id.*

The elements of fraud under Maryland law are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Moscarillo v. Pro. Risk Mgmt. Servs.*, 921 A.2d 245, 254 (Md. 2007) (internal quotations omitted); *see Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005)), *on reconsideration in part*, 71 A.3d 150 (Md. 2013). Central to a fraud claim is the allegation of a misrepresentation, that is, "a false or misleading assertion about something . . . ." Misrepresentation, Black's Law Dictionary (11th ed. 2019). Although a misrepresentation "commonly takes the form of spoken or written words . . . . [a]n assertion may also be inferred from conduct other than words" if the conduct has "the effect of a misrepresentation." *Id.* (quoting Restatement (Second) of Contracts § 159 cmt. a (1979)); *see*

*Council of Co–Owners v. Whiting–Turner*, 517 A.2d 336, 348 (Md. 1986) (noting in discussion of negligent misrepresentation that "nonverbal conduct may under certain circumstances constitute a representation").

Ms. Brown claims that the Board and Principal Brown misrepresented, through words and conduct, why she was transferred from Flowers and Principal Brown's role in bringing about her transfer.  ECF 22, ¶¶ 83–85, 93–95.  She alleges two false statements by defendants.  She claims they misrepresented that she "was transferred from Flowers because a grievance(s) was filed."  *Id.* ¶ 93.  She also alleges they "misrepresented that Principal Brown was reprimanded for allowing Plaintiff to work for [him]."  *Id.*  She claims the Board "issued a letter of reprimand to Principal Brown to make it appear as if [he] was a victim of PGCPS's decision rather than a participant." *Id.* ¶ 85E.

Beyond those two alleged false statements, plaintiff cites conduct that she believes amounted to misrepresentations.  She alleges that Principal Brown made another teacher, who was a union representative, change classrooms and "caused a coveted class to be assigned to Plaintiff even though teachers with seniority had requested to teach the class," both of which he allegedly did "to create animosity towards Plaintiff's employment at Flowers" and to "cause grievances to be filed against Plaintiff's working at Flowers."  ECF 22, ¶¶ 83A, 85A-B, 93A.  Additionally, she claims Principal Brown used the letter of reprimand "to solicit family support to convince Plaintiff not to sue PGCPS."  *Id.* ¶ 85F; *see id.* ¶ 93B.  The Board's "alleged fraudulent actions" included using those grievances "as cause to transfer Plaintiff from Flowers," in breach of its agreement with plaintiff and using the letter of reprimand to conceal Principal Brown's role in her termination. *Id.* ¶¶ 83B, 85C–E; *see id.* ¶ 93A-B.  Simply put, she claims defendants took steps to make her think she was transferred due to other teachers' grievances, rather than because defendants wanted

to transfer her.  *Id.* ¶¶ 83–85, 93A.  Plaintiff also alleges that defendants "performed the alleged fraudulent actions to transfer Plaintiff in a way that would minimize the likelihood that Plaintiff would sue PGCPS."  *Id.* ¶ 84; *see id.* ¶ 94.  She claims "[i]f the alleged misrepresentations had not been made, [she] would have sued PGCPS."  *Id.* ¶ 95.

The Court is not convinced the alleged deceptive conduct has the effect of misrepresentations.  However, even if it did, Ms. Brown has not alleged she relied on the conduct or the false statements to her detriment.  Although she claims she relied on defendants' words and actions in deciding not to sue the Board, *id.* ¶¶ 94–95, she did, in fact, sue the Board in this case. ECF 1.  Perhaps her allegations could provide grounds for equitable tolling if the timeliness of her claims were at issue, but she cannot claim in this lawsuit—in which she sued the Board—that defendants' conduct kept her from suing the Board.  Beyond these allegations, she does not allege that she took, or refrained from taking, any other action in reliance on defendants' conduct or false statements.  Therefore, she does not state a claim for fraud or fraudulent misrepresentation.

Without the fraud claims, plaintiff's claim for civil conspiracy to commit fraud cannot survive defendants' motion to dismiss.  Civil conspiracy is "the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'"  *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)). To state a claim for civil conspiracy, the plaintiff must allege other tortious conduct.  *See Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 647 (D. Md. 2020) ("Under Maryland law, there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is

established."). The Fourth Circuit and the Maryland Court of Appeals have held that a plaintiff cannot prevail on a claim for civil conspiracy under Maryland law "in the absence of other tortious injury to the plaintiff." *Marshall*, 758 F.3d at 541 (quoting *Alleco*, 665 A.2d at 1045). Stated differently, "[n]o action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort." *Alleco*, 665 A.2d at 1045 (quoting *Domchick v. Greenbelt Consumer Servs., Inc.*, 87 A.2d 831, 834 (Md. 1952)). Because plaintiff fails to state a claim for fraud, her civil conspiracy claim based on fraud fails as well.

### B.  Intentional Infliction of Emotional Distress

Ms. Brown asserts a claim of intentional infliction of emotional distress against the Board and Principal Brown. She alleges that defendants encouraged her to move to Maryland on the promise that she could teach at Flowers and then transferred her to another school at the beginning of the schoolyear, which caused her to "f[a]ll into a depression" and to "drink heavily, something [she] had never done previously." ECF 22, ¶ 46. As a result of the transfer, she "was distraught and could not function" and she "experienced health issues including, but not limited to, severe anxiety, intense headaches and insomnia," so she "went on sick leave from PGCPS and began seeing a therapist." *Id.* ¶ 47. She "suffered from severe depression for more than a year after leaving PGCPS" and "was unable to repair rifts in her relationships with her children." *Id.* ¶ 53.

The elements of intentional infliction of emotional distress under Maryland law are [1] the defendant's "conduct was intentional or reckless; [2] the conduct was extreme and outrageous; [3] a causal connection between the wrongful conduct and the emotional distress; and [4] the emotional distress was severe." *Burgess v. Goldstein*, 997 F.3d 541, 554 n.5 (4th Cir. 2021) (citing *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). Liability for this tort "should be imposed sparingly and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *Haines v. Vogel*, 249 A.3d 151, 163 (Md. Ct. Spec. App. 2021) (quoting *Figueiredo-*

*Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991)), *cert. denied*, 257 A.3d 1153 (Md. 2021).  Notably, Maryland does not recognize the tort of negligent infliction of emotional distress.  *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 619 n.1 (4th Cir. 2015); *Beynon v. Montgomery Cablevision Ltd. P'ship*, 718 A.2d 1161, 1165 (Md. 1998).  Thus, to state a claim, plaintiff must allege the defendants "desire[d] to inflict severe emotional distress," knew that "such distress [was] certain, or substantially certain, to result from [their] conduct," or "act[ed] recklessly in deliberate disregard of a high degree of probability that the emotional distress [would] follow."  *Haines*, 249 A.3d at 163 (quoting *Harris*, 380 A.2d at 614).  Additionally, to be "extreme and outrageous," the conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992), and noting, as of 2021, "[a] claim for IIED has been sustained in Maryland four times").

Ms. Brown does not adequately allege the defendants acted with the requisite intent. Beyond stating that they "intentionally caused [her] emotional distress," ECF 22, ¶ 121, she does not allege facts from which the Court could infer that the defendants desired to inflict several severe emotional distress, knew such distress was certain to result from their conduct, or acted recklessly in deliberate disregard of a strong likelihood that their conduct would cause such distress.  Ms. Brown's conclusory allegation does not suffice.  *See Krueger v. Angelos*, 26 F.4th 212, 215 n.1, (4th Cir. 2022) (court does "not accept as true unwarranted inferences, unreasonable conclusions or arguments" (quoting *Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020))).

Ms. Brown also does not sufficiently allege the defendants' conduct was extreme and outrageous.  She claims defendants encouraged her to move to Maryland on a promise that she could teach at Flowers where her brother was the principal even though that arrangement violated

PGCPS policy.  She alleges that her brother decided he did not want her teaching at his school and that the defendants manufactured grounds for transferring her to another school so that she would not sue them for breaching their agreement.  This conduct, if true, is not admirable, but it is not extreme and outrageous conduct that goes "beyond all possible bounds of decency."  *See Haines*, 249 A.3d at 163.  It is a far cry from the intentional infliction of emotional distress claims that have survived in Maryland.  *See id.* at 163–64 (identifying cognizable IIED claims where "HIV-positive surgeon operated on the appellants without their knowledge of his disease"; "psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple"; "physician with herpes had sex with nurse without informing her that he had the disease and infected her"; and "workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the 'sole purpose' of harassing her and forcing her to drop her claim or commit suicide").

The Board and Principal Brown's motion to dismiss is granted.  Counts 3, 4, 5 and 9 are dismissed.

## V.   Principal Brown's Motion to Dismiss

Principal Brown moves to dismiss the three claims brought against only him:  defamation, false light, and tortious interference with economic relations.

### A.  Defamation

Ms. Brown claims Principal Brown is liable for defamation based on statements he made to their father.  ECF 25-1, at 8–10; ECF 22, ¶¶ 111–12.  To state a claim for defamation under Maryland law, Ms. Brown "must allege specific facts establishing four elements . . . : '(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that [she] thereby suffered harm.'"  *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Indep. Newspapers, Inc.*

*v. Brodie*, 966 A.2d 432, 448 (Md. 2009)); *see Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. GJH-19-1312, 2021 WL 1215769, at *10 (D. Md. Mar. 31, 2021) (quoting *Piscatelli*).  Principal Brown argues Ms. Brown fails to allege the first, third, and fourth elements. ECF 25-1, at 9–11.

Principal Brown argues plaintiff has not alleged that he was legally at fault in making the statements. *Id.* at 10.  A defendant is "legally at fault" when the defendant acts negligently.  *Finley Alexander*, 2021 WL 1215769, at *11; *see Hearst Corp. v. Hughes*, 466 A.2d 486, 491 (Md. 1983). Negligence, in the context of a defamation claim, is described as follows:

> Negligence is conduct that creates an unreasonable risk of harm. The standard of conduct is that of a reasonable person under like circumstances. Insofar as the truth or falsity of the defamatory statement is concerned, the question of negligence has sometimes been expressed in terms of the defendant's state of mind by asking whether he had reasonable grounds for believing that the communication was true. Putting the question in terms of conduct is to ask whether the defendant acted reasonably in checking on the truth or falsity or defamatory character of the communication before publishing it.

Restatement (Second) of Torts § 580B (1977) (internal citations omitted); *see Finley Alexander*, 2021 WL 1215769, at *13 (quoting *Hawk v. Ruby*, No. 03-C-15-005270, 2019 WL 4860760, at *9 (Md. Ct. Spec. App. Oct. 1, 2019) (quoting Restatement (Second) of Torts § 580B, cmt. g (1977))).

Plaintiff alleges, "[b]ased on information and belief, [that] Principal Brown had knowledge that the information he allegedly publicized was untrue or [he] acted in reckless disregard of the truth."  ECF 22, ¶ 117.  She also alleges, "based on information and belief, that [he] shared the alleged statements . . . to paint [her] in an unfavorable light" and that she "believes that each alleged statement was intended to destroy [her] reputation and credibility and to encourage family members to turn their backs on [her]."  *Id.* ¶¶ 112, 116.  These conclusory allegations about Principal Brown's state of mind do not support an inference that he did not have reasonable grounds for believing the statements were true or that he acted unreasonably by failing to discern

their veracity.  Therefore, plaintiff does not sufficiently allege Principal Brown was legally at fault in making the statements.

Nor does plaintiff adequately allege she suffered harm as a result of the defamatory statements.  To allege harm, Ms. Brown may allege either that the purported defamation caused her harm or that Principal Brown acted with actual malice, in which case the Court would presume harm.  *See Amalgamated Transit Union v. Lovelace*, 109 A.3d 96, 105 (Md. 2015).  A statement is made with "actual malice" when it is "made 'with knowledge that it [is] false or with reckless disregard of whether it [is] false or not.'" *Id.* at 105 n.12 (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1213 (Md. 1992) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964))). "[T]he usual standards of notice pleading apply in defamation cases," including those where the plaintiff must establish actual malice.  *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Hatfill*, 416 F.3d at 329); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (observing "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice").  Thus, to allege actual malice sufficiently for the Court to presume damages, the plaintiff must "allege[ ] facts that, if proven, create a plausible inference that [the defendant made the statements] with knowledge or reckless disregard of their falsity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021).

Plaintiff generally alleges that her brother's statements caused her harm and affected her financially, emotionally, and physically, *see id.* ¶ 113, but she does not specify how.  While she does allege she suffered from depression, anxiety, headaches, and insomnia, *see* ECF 22, ¶¶ 46, 47, 53, she attributes those specific harms to her transfer from Flowers in 2013, not to her brother's

statements to their father in November 2019. The same goes for her allegation that she suffered financially. Although she alleges she incurred out-of-pocket medical expenses, *id.* ¶ 50, she does not allege the defamatory statements caused her to incur those expenses. The only logical inference from the allegation is that the medical expenses were incurred shortly after her resignation in 2013 when she learned she did not have health insurance through PGCPS. Because Ms. Brown does not specify how her brother's statements to their father caused her harm, she has not adequately pled harm. *See Piscatelli*, 35 A.3d at 1147.

Nor has plaintiff adequately pled actual malice. To the extent her allegation that Principal Brown "acted in reckless disregard of the truth" can be construed as an actual malice allegation, plaintiff has merely recited a legal standard. That is not enough to plead actual malice. Her conclusory allegations of actual malice "do not sufficiently plead that [Principal Brown was] at fault for [his statements]." *Watkins v. Cable News Network, Inc.*, No. GJH-17-780, 2018 WL 1970747, at *6 n.11 (D. Md. Apr. 25, 2018) (stating "the Court would independently dismiss [the plaintiff's] defamation claims" as conclusory because "'bare recitation of the legal standard' and 'naked assertions alone' are insufficient to 'support a finding of malice'" (quoting *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761 (D. Md. 2015)).

Plaintiff has failed to plead specific facts that could plausibly establish two elements of defamation. Principal Brown's motion to dismiss the defamation claim is granted.[3]

---

[3] Because Ms. Brown fails to allege the third and fourth elements of a defamation claim, the Court need not consider Principal Brown's arguments that she failed to allege the first element (a defamatory statement to a third person) and that the conditional privilege "to publish . . . in the interest of others" defeats her claim. *See Gohari v. Darvish*, 767 A.2d 321, 329–30 (Md. 2001) (conditional privilege protects statements made to a family member when the "information . . . affects a sufficiently important interest of the recipient" (quoting Restatement (Second) of Torts § 595, at 268)). Insofar as plaintiff also alleges Principal Brown made the alleged defamatory statements to "others," such vague allegations cannot survive a motion to dismiss.

**B.  False Light**

Plaintiff also brings a false light claim against Principal Brown.  The elements of false

light are:

> (1) that the defendant gave "publicity to a matter concerning another that places the
> other before the public in false light"; (2) "the false light in which the other person
> was placed would be highly offensive to a reasonable person"; and (3) the defendant
> "had knowledge of or acted in reckless disregard as to the falsity of the publicized
> matter and the false light in which the other would be placed."

*Watkins v. Wash. Post*, No. PWG-17-818, 2018 WL 805394, at *4 (D. Md. Feb. 9, 2018)

(quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995)).

Plaintiff's false light claim fails for two reasons.  First, a false light claim "may not stand

unless the claim also meets the standards of defamation," which are not met here.  *See Piscatelli*

*v. Smith*, 12 A.3d 164, 173 (Md. Ct. Spec. App. 2011) (quoting *Crowley v. Fox Broadcasting Co.*,

851 F. Supp. 700, 704 (D. Md. 1994)).  Second, unlike for "defamation which requires only

publication, and can be completed upon communication to only one person," for false light, "'[t]he

disclosure of the private facts must be a public disclosure, and not a private one; there must be, in

other words, publicity[.]'"  *S. Volkswagen*, 357 F. Supp. 2d at 845 (quoting *Robinson*, 620 F. Supp.

at 1070 (quoting *Hollander v. Lubow*, 351 A.2d 421, 426 (Md. 1976), *superseded on other grounds*

*by* Md. Rule 20-501(a), (e))).  Here, because plaintiff makes only a conclusory allegation that

Principal Brown made the statements to "others" besides their father, she has not alleged publicity.

Therefore, her false light claim is dismissed.

**C.  Tortious Interference with Economic Relations**

Ms. Brown claims that Principal Brown tortiously interfered with her at-will employment

with the Board.  ECF 22, ¶¶ 84, 104, 106.  Tort liability for interference with a contract terminable

at will lies if a third party "maliciously or wrongfully infringes upon an economic relationship."

*Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117 (Md. 1994).  The tort has four elements under

Maryland law: "(1) intentional and wilful [sic] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss" that result from the acts. *Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (quoting *Kaser v. Fin. Protection Mktg., Inc.,* 831 A.2d 49, 53 (2003)).  Because the contract is terminable at will, "[a] broader right to interfere with economic relations exists" than with other contracts, for which the right to interfere would be "more narrowly restricted." *Macklin*, 639 A.2d at 117 (quoting *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984)).  The plaintiff must allege "conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *K.G. Tile, LLC v. Summitville Tiles, Inc.*, No. SAG-20-2072, 2022 WL 426000, at *11 (D. Md. Feb. 11, 2022) (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994)).  Acts that amount to "independently wrongful or unlawful" conduct "include 'common law torts and "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith."'" *Id.* (quoting *Alexander & Alexander, Inc.*, 650 A.2d at 271 (quoting *K&K Mgmt. v. Lee*, 557 A.2d 965, 979 (Md. 1989))).

Ms. Brown claims that "Principal Brown tortiously interfered with [her] employment at PGCPS by taking steps which led to Plaintiff being transferred from Flowers."  ECF 22, ¶ 104. Specifically, at her request, he assigned her to an entrepreneurship class, which upset "other teachers with seniority" who wanted to teach that class. *Id.* ¶¶ 33–35.  She claims that he "knew assigning the entrepreneurship course to Plaintiff would cause backlash" and "it was [his] goal to have a teacher file a grievance . . . because he did not want Plaintiff to continue teaching at Flowers." *Id.* ¶ 67.  She also alleges that he announced to other teachers that she was his sister and

at least one teacher filed a grievance complaining she should not be teaching at Flowers because she was the principal's sister. *Id.* ¶¶ 28, 43. Plaintiff further alleges Principal Brown "desired to have [her] transferred to prevent [her] from discovering additional information" about an affair he had and a student's grade he had changed. *Id.* ¶¶ 30, 105.

Plaintiff fails to allege that Principal Brown tortiously interfered with her economic relationship with the Board. Principal Brown's alleged actions are not criminal, violent, threatening, or intimidating, and they do not give rise to liability for fraud or other common law torts. He did not initiate any lawsuits or criminal prosecutions against her. Consequently, Ms. Brown has not alleged, as she must, that his conduct exceeded his "broader right to interfere" with her at-will employment by qualifying as "independently wrongful or unlawful," and not only in relation to its impact on her employment at PGCPS. *See K.G. Tile*, 2022 WL 426000, at *11; *Alexander & Alexander*, 650 A.2d at 271; *Macklin*, 639 A.2d at 117.

Ms. Brown also claims tortious interference based on Principal Brown's alleged "interfere[nce] with [her] request that PGCPS reissue [her] paychecks." ECF 22, ¶ 106. She claims that the Board did not send her the paychecks due to a mistaken belief that plaintiff did not want them. *Id.* ¶ 61. Ms. Brown "believes that Principal Brown expressed to PGCPS that Plaintiff did not want the money" and thereby "may have substantially delayed PGCPS from reissuing Plaintiff's paychecks." *Id.* ¶ 106. These bare allegations do not state a claim for tortious interference with economic relations. *See Krueger*, 26 F.4th at, 215 n.1; *Carey*, 957 F.3d at 474.

Because plaintiff does not state a claim for tortious interference with economic relations, the claim is dismissed.

## VI.      Conclusion

For the reasons stated in this memorandum opinion, Mr. Tyrone and the Tyrone Law Group's motion to dismiss Counts 11 and 12, ECF 23, is granted; Principal Brown's motion to dismiss Counts 6, 7, and 8, ECF 25, is granted; and the Board and Principal Brown's motion to dismiss Counts 3–5 and 9, ECF 29, is granted.   All counts other than Counts 1, 2, and 10 are dismissed.   Because plaintiff had the opportunity to amend her pleading in response to the perceived deficiencies and filed an amended complaint that still failed to state these claims sufficiently, dismissal is with prejudice.   *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (court need not provide opportunity to amend if amendment would be futile); *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 (4th Cir. 2017) ("[W]hen a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend." (citation omitted)); *Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999) (noting court need not grant leave to amend where amendment would be futile); *Springmeyer v. Marriott Int'l, Inc.*, No. PWG-20-867, 2021 WL 809894, at *5 (D. Md. Mar. 3, 2021) (stating "further amendment would be futile" because plaintiffs "already amended their complaint in view of the[] [alleged] deficiencies").

The Board is the only remaining defendant.   A scheduling order will issue for this case to proceed as to Counts 1, 2, and 10.

A separate order follows.


March 25, 2022                                             /S/
Date                                                    Deborah L. Boardman
                                                        United States District Judge